UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| UPPERLINE EQUIPMENT COMPANY, | ) | | |
| R & K EQUIPMENT SERVICES, and | ) | | |
| NORTH AMERICAN MACHINERY, INC., | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:08-CV-260 |
| | ) | | (VARLAN/SHIRLEY) |
| J & M, INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION

This civil action is before the Court on Defendant J & M Incorporated's ("J & M's")Motion for Summary Judgment[1] [Doc. 21], in which J & M asserts that there is no genuine issue of material fact and the Complaint [Doc. 1-2] filed by plaintiffs Upperline Equipment Company, R & K Equipment Services, and North American Machinery, Inc. (referred to hereinafter as "Plaintiffs") should be dismissed as a matter of law. Plaintiffs have filed a response in opposition [Doc. 23], and J & M has filed a reply [Doc. 26].[2]

---

[1] Defendant J & M Incorporated ("J & M") was incorrectly named in the Complaint as J & M Inc. [Doc. 21].

[2] Plaintiffs acknowledge, in their response to the Motion for Summary Judgment, that they are no longer pursuing claims under the Louisiana Unfair Trade Practices Act, L.S.A.-R.S. § 51:1405 [Doc. 23, at n.2]. Thus, the Court will not address these claims as Plaintiffs are no longer pursuing them.

The Court granted leave for Plaintiffs to file a surreply [Doc. 27-1], and J & M filed a reply to Plaintiffs' surreply [Doc. 30]. The Motion for Summary Judgment is now ripe for determination. The Court has carefully considered the pending Motion for Summary Judgment, along with the parties' briefs and relevant documents and exhibits. Because the Court finds that no material issue of fact exists as to Plaintiffs' claims, J & M is entitled to judgment as a matter of law. Accordingly, J & M's Motion for Summary Judgment [Doc. 21] will be granted.

**I.   Relevant Background**

On December 6, 2007, J & M entered into a written purchase agreement (the "Purchase Agreement") with North American Machinery, Inc. ("NAM")[3] for the purchase of a Manitowoc 4100-WV Series II Crane and Shugart barge package (the "barge package") for $1,100,000.00 [Doc. 21-1, at ¶ 4, Doc. 21-2]. The Purchase Agreement contained two express conditions precedent: (1) that the purchase was "subject to [a] final inspection tomorrow [December 7, 2007]; and (2) a $100,000.00 deposit to be sent on December 7, 2007 [Doc. 21-2].[4] Following Plaintiffs' purchase of the barge package from J & M,

---

[3] Plaintiff NAM entered into the Purchase Agreement with J & M on behalf of all Plaintiffs [Doc. 23-1, at ¶ 6]. The purchase of the barge package under the Purchase Agreement was a joint venture between Plaintiffs [*Id.*].

[4] The Purchase Agreement was accepted by Dwayne Potter, on behalf of J & M, on December 6, 2007 [Doc. 23-1, at ¶ 8]. Next to the typed provision in the Purchase Agreement stating, "$100,000.00 deposit to be sent," Dwayne Potter put an arrow with the notation 12/7/07 and initialed it [*Id.*].

2

Plaintiffs intended to sell the barge package to JH Reid General Contractors ("JH Reid") [Doc. 23-1, at ¶ 5].[5]

On Friday, December 7, 2007, Ronald Schumacher ("Schumacher"), a representative of Plaintiffs, and Tom Smith ("Smith"), a representative of JH Reid, traveled to Meigs County, Tennessee [Doc. 23-1, at ¶ 9, Doc. 23-2, at ¶¶ 3-7]. Later that day, Schumacher and Smith conducted the inspection of the barge package with Robert Potter[6] ("Robert Potter"), a representative of J & M [Doc. 21-1, at ¶ 5, Doc. 23-1, at ¶¶ 9-10, Doc. 23-2, at ¶¶ 3-7]. Plaintiffs allege that following the inspection, JH Reid confirmed its agreement with Plaintiffs to purchase the barge package for $1,255,000.00, following Plaintiffs' purchase of the barge package from J & M [Doc. 23-1, at ¶ 11, Doc. 23-2, at ¶ 10].

---

[5]Pursuant to 28 U.S.C. § 1746, Plaintiffs have submitted unsworn statements supporting their opposition brief. Section 1746 provides that "any matter . . . required or permitted to be supported, evidenced, established, or proved by . . . affidavit . . . may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement in writing of such person which is subscribed by him, as true under penalty of perjury, and dated . . . .". 28 U.S.C. § 1746. The Sixth Circuit permits such unsworn declarations to be submitted in lieu of affidavits so long as they meet the strictures of § 1746. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363 n.3 (6th Cir. 2001); *see, e.g.*, *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475-76 (6th Cir. 2002) (affirming, *inter alia*, the district court's granting of the defendant's motion for summary judgment, supported by a unsworn declaration substantially conforming to 28 U.S.C. § 1746, even though it was not dated). Plaintiffs' "Unsworn Statement of Gregory A. Preuss" [Doc. 23-1] conforms to § 1746. Plaintiffs' "Unsworn Statement of Ronald Schumacher, [Doc. 23-2] conforms in all respects to § 1746, except that it is undated. However, the Court finds that the undated "Unsworn Statement of Ronald Schumacher" substantially conforms to § 1746 and thus, in light of this substantial conformance and J & M's lack of objection, the Court will treat it as an unsworn statement pursuant to § 1746. *See Peters*, 285 F.3d at 475-76.

[6]Robert Potter is the son of Dwayne Potter [Doc. 21-1]. Dwayne Potter was the vice-president of J & M at all times relevant to this litigation [*Id.*].

3

Plaintiffs allege that the inspection of the barge package and the attendant negotiations were completed at approximately 5:30 P.M. on Friday, December 7, after the banks had closed and after wire transfers could be initiated [Doc. 23-1, at ¶¶ 11-12].  At approximately 7:30 P.M. on Friday, December 7, Plaintiffs allege that Greg Preuss ("Preuss") of NAM called Dwayne Potter ("Dwayne Potter") of J & M to confirm Plaintiffs' agreement to purchase the barge package from J & M and to explain that Plaintiffs could not send J & M the $100,000.00 deposit until the following Monday, December 10 [*Id.*, at ¶¶ 10-12]. Dwayne Potter allegedly responded, "Monday would be fine." [*Id.*, at ¶¶ 11-13].  At approximately 7:40 P.M. on December 7, Plaintiffs allege that Schumacher also called Dwayne Potter to confirm the deal and confirm that the $100,000.00 deposit could be sent on Monday, December 10  [Doc. 23-2, at ¶ 11].

Plaintiffs allege that the following day, Saturday, December 8, Dwayne Potter called JH Reid and offered to sell the barge package for $1,170,00.00, circumventing Plaintiffs' prior agreement with JH Reid [Doc. 23-1, at ¶¶ 14-16,  Doc. 23-2, at ¶¶ 12-13].  A purchase agreement between JH Reid and J & M was put into writing on December 10, 2007 [*See* Doc. 23-4].  On Monday, December 10, Plaintiffs allege that J & M denied the existence of the December 7 oral modification to the Purchase Agreement and refused to sell the barge package to Plaintiffs, citing Plaintiffs' failure to timely deliver the deposit as required by the Purchase Agreement [Doc. 23-1, at ¶¶ 14-16,  Doc. 23-2, at ¶¶ 12-13].

4

On February 4, 2008, Plaintiffs filed the Complaint [Doc. 1] in the United States District Court for the Eastern District of Louisiana alleging four causes of action against J & M and JH Reid.[7] Specifically, Plaintiffs alleged: (1) breach of contract; (2) failure to act in good faith; (3) failure to observe reasonable commercial standards of fair dealing; and (4) a violation of the Louisiana Trade Practice Act (the "LUPTA"), Louisiana Revised Statutes Annotated § 51:1405.[8] By agreement and for the convenience of the parties, this case was transferred to this Court, the United States District Court for the Eastern District of Tennessee, pursuant to 28 U.S.C. § 1404(a) [Doc. 1-18]. J & M then filed the instant Motion for Summary Judgment on April 27, 2009, arguing that there is no genuine issue of material fact and Plaintiffs' Complaint should be dismissed as a matter of law. *See* Fed. R. Civ. P. 56(c). Plaintiffs assert that there are disputed issues of material fact that preclude summary judgment.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light

---

[7]JH Reid was dismissed by stipulation of the parties on June 10, 2009 [*See* Doc. 28].

[8]Plaintiffs are no longer pursuing claims under LUPTA.

5

most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Id.* at 249. The judge does not weigh the evidence, judge the credibility of witnesses, nor determine the truth of the matter. *Id.* Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

### III. Analysis

Pursuant to Federal Rule of Civil Procedure 56(c), J & M argues that Plaintiffs' Complaint should be dismissed as a matter of law because (1) there can be no breach of contract claim as a matter of law because no enforceable contract arose when Plaintiffs failed to satisfy the express condition precedent of the Purchase Agreement that required Plaintiffs to send the $100,000.00 deposit to J & M by December 7, 2007. Further, J & M asserts that it is entitled to judgment as a matter of law because, (2) if there was no enforceable contract,

6

J & M had no duty to act in good faith or observe reasonable commercial standards of fair dealing.[9]

### A.     Breach of Contract Claim

In Tennessee, the essential elements of a breach of contract claim "include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (quoting *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Accordingly, for a party to state a breach of contract claim, there must be an enforceable contract.

J & M asserts that the Purchase Agreement was "nothing more that [sic] a 'conditional contract' with conditions precedent that were never satisfied, or alternatively stated . . . an unenforceable agreement," and summary judgment is appropriate because there can be no breach of contract claim when there was no enforceable contract due to Plaintiffs' failure to satisfy an express condition precedent of the Purchase Agreement [Doc. 30, at p. 2]. Moreover, J & M asserts that any alleged oral modification to the Purchase Agreement is invalid because the Purchase Agreement falls within the Statute of Frauds, and the doctrine of partial performance, a limited exception to the Statute of Frauds, does not apply.

---

[9]J & M also asserts that summary judgment is appropriate as to Plaintiffs' claims for violations of LUPTA because this action is governed by the substantive law of the State of Tennessee, not by the substantive law of Louisiana [Doc. 22]. Plaintiffs have acknowledged that they are no longer pursuing their LUPTA claims and therefore, the Court will not address those claims or J & M's arguments pertaining to those claims.

7

Plaintiffs do not dispute that the Purchase Agreement contained an express condition precedent that was not satisfied in accordance with the written Purchase Agreement. However, Plaintiffs argue that the Purchase Agreement was partially performed and a valid oral modification occurred due to the doctrine of partial performance. Thus, Plaintiffs state that because there was an enforceable contract, J & M committed a breach by refusing to sell Plaintiffs the barge package, and, as a result, Plaintiffs incurred damages.

### 1. Condition Precedent

It is undisputed that the provision in the written Purchase Agreement requiring Plaintiffs to send a $100,000.00 deposit to J & M on December 7, 2007 was a condition precedent to J & M's obligation to sell the barge package to Plaintiffs [Doc. 21-2, Doc. 22, Doc. 23, at pp. 2, 6, Doc. 27-1, at pp. 3-4]. Under Tennessee law, a condition precedent has been defined as "[a]n event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. Ct. App. 1986) (quoting *Restatement Second Contracts,* § 244). A condition precedent in the law of contracts may be a condition which must be performed before the agreement of the parties becomes a binding contract or it may be a condition which must be fulfilled before the duty to perform an existing contract arises. *Strickland v. Lawrenceburg*, 611 S.W.2d 832, 837 (Tenn. Ct. App. 1980). Thus, because J & M's performance under the written Purchase Agreement was subject to the condition precedent of Plaintiffs' sending the $100,000.00 deposit on December 7, the deposit must have been

8

sent on December 7 before J & M's obligation to perform under the Purchase Agreement became due.

It is also undisputed that this condition precedent of the deposit was unsatisfied [Doc. 21-2, Doc. 22, Doc. 23, Doc. 27-1]. Therefore, because J & M's performance under the Purchase Agreement was subject to Plaintiffs' sending of the deposit, and, because this was unsatisfied, J & M's duty to perform under the Purchase Agreement never became due and there arose no enforceable agreement. However, the Court's inquiry cannot end here due to Plaintiffs' allegation of an oral modification of the Purchase Agreement, specifically, an oral modification of the condition precedent which changed the date for sending the $100,000.00 deposit from December 7, to December 10.

### 2. Oral Modifications

In Tennessee, "[a]fter a written contract is made, it may be modified by the express words of the parties in writing, as well as by parol" evidence *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990); *see also Co-Operative Stores Co. v. United States Fid. & Guar. Co.*, 195 S.W. 177, 180 (Tenn. 1917). The parol evidence rule is inapplicable to evidence of oral modification because the rule will "permit testimony to . . . show a subsequent modification to a written agreement. Once admitted, this evidence does not in any way deny what the original agreement expressed; however, it merely demonstrates that parties may have exercised their right to modify the written agreement." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 572 (6th Cir. 2003) (quoting *Golden Constr. Co v. Greene*, No. 83-286, 1987 WL 18061, at *1 (Tenn. Ct. App. Oct 9, 1987)); *see also GRW Enters., Inc. v.*

9

*Davis*, 797 S.W.2d 606, 610-11 (Tenn. Ct. App. 1990). Thus, under Tennessee law, Plaintiffs and J & M could orally modify the Purchase Agreement.

### 3. The Statute of Frauds

J & M suggests that any oral modification to the Purchase Agreement would fall under Tennessee's Uniform Commercial Code (the "UCC") and the Statute of Frauds. *See* TENN. CODE ANN. §§ 47-2-101, *et seq.*; *id.* §§ 47-2-201 to - 210. As required under the Statute of Frauds, the Purchase Agreement contemplates a sale of goods, the barge package, as defined by Tennessee's UCC, and the purchase price exceeds $500.00 [Doc. 21-2]. *See id.* §§ 47-2-105(1), 47-2-201(1). The Statute of Frauds states that a contract is "not enforceable by way of action or defense unless there is some writing or record sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . . *Id.* § 47-2-201(1). It is undisputed that the written Purchase Agreement between Plaintiffs and J & M existed and that Dwayne Potter of J & M, the party to be charged, signed the Purchase Agreement. Accordingly, the Purchase Agreement falls within the Statute of Frauds.

The Statute of Frauds addresses modification, rescission, and waiver of contracts that fall within the Statute of Frauds and states that "[t]he requirements of the statute of frauds section of this chapter ( § 47-2-201) must be satisfied if the contract as modified is within its provisions. TENN. CODE ANN § 47-2-209(3). For instance, "[a] sales contract which falls within the statute of frauds can only be rescinded by written agreement signed by the party against whom rescission is sought. *In re Messenger*, 166 B.R. 631, 634 n.3 (M.D. Tenn.

10

1994) (interpreting and citing TENN. CODE ANN. §§ 47-2-209(3), 47-2-201). Similarly, a contract modification can only be effective if it is in writing and signed by the party to be charged. *See Hidden Brooke Air, Inc. v. Thabet Aviation Intern. Inc.*, 241 F. Supp. 2d 246, 270 (S.D.N.Y. 2002) (observing that the statute of frauds applies to modifications). The alleged oral modification to the Purchase Agreement was not in writing and would be bared by the Statute of Frauds.

### 4. Partial Performance Exception

There is however, an exception to the writing requirement for a modification to a contract within the Statute of Frauds—once partial performance of the contract occurs, the Statute of Frauds will not apply. *Blasingame v. Am. Materials, Inc.*, 654 S.W.2d 659, 663 (Tenn. 1993) (superseded by statute on other grounds); *Foust v. Carney*, 329 S.W.2d 826, 829 (1959). In other words, if the parties partially perform a contract, an oral modification to that contract does not have to be in writing. The Tennessee Supreme Court has explained the partial performance exception this way:

> This doctrine of partial performance to take the verbal contract out of the operation of the Statute of Frauds is purely an equitable doctrine and is a judicial interpretation of the acts of the parties to prevent frauds. The acts of the appellant relied on as partial performance had been done to him in pursuance to the averred contract and agreement and are clearly referable thereto. "The plaintiff must be able to show such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, so far to alter his position as to incur an unjust and unconscious injury and loss,

11

> in case the defendant is permitted after all to rely upon the statutory defense." 49 *Am. Jur.*, Sec. 427, page 733.

*Buice v. Scruggs Equip. Co.*, 250 S.W.2d 44, 48 (Tenn. 1952). Tennessee courts have not articulated definite standards for determining the nature or the magnitude of the acts necessary for the partial performance doctrine to apply, other than to say it depends upon the particular facts of each case. *Schnider v. Carlisle Corp.*, 65 S.W.3d 619, 622 (Tenn. Ct. App. 2001); *see also Foust*, 329 S.W.2d at 829. J & M asserts that partial performance of the Purchase Agreement did not occur so any alleged oral modification would be invalid. Plaintiffs do not dispute that the Purchase Agreement falls within the Statute of Frauds, but assert that the doctrine of partial performance takes the alleged oral modification out of the Statute of Frauds, thus permitting the oral modification.

### 5. The Parties' Performance Under the Purchase Agreement

Representatives from Plaintiffs and JH Reid traveled to Meigs County, Tennessee to inspect the barge package. J & M made the barge package available to Plaintiffs for this inspection. Plaintiffs inspected the barge package, satisfying one express condition precedent of the Purchase Agreement. According to Plaintiffs, there were discussions between representatives of the parties regarding the date on which the deposit was to be sent, and this date was orally modified. This modification of the Purchase Agreement was not memorialized in a writing. Thus, the sum of the parties' performance under the Purchase Agreement was that J & M held the barge package out for inspection by Plaintiffs, and Plaintiffs performed the inspection. Once the inspection was performed, performance under the written Purchase Agreement ceased—Plaintiffs did not send or attempt to send the

12

deposit on December 7 and further performance by J & M never became due because the deposit was never sent and the remainder of the purchase price was never paid

Essentially the only required performance under the Purchase Agreement that was actually performed and completed was the inspection. Following the inspection, Plaintiffs can point to no other performance under the Purchase Agreement by either J & M or Plaintiffs. While the inspection condition precedent was satisfied, along with preparatory acts by the parties in furtherance of the inspection, such as Plaintiffs' travel to Meigs County, the Court cannot find that these actions rise to the level at which partial performance can be found to take the alleged oral modification out of the Statute of Frauds. This is not a case where Plaintiffs have performed almost all the obligations they agreed to under the parties' agreement.[10] Moreover, the inspection was not a condition precedent that Plaintiffs had a duty to perform—it was the obligation of J & M to hold the barge package out "subject to [a] final inspection" by Plaintiffs [Doc. 21-2]. Finally, beyond stating that Plaintiffs' bound their agreement with JH Reid after being assured by Dwayne Potter, Plaintiffs have not shown any detrimental reliance or unjust injury or loss based on that reliance. *See Buice*, 250 S.W.2d at 48.

---

[10]*See, e.g., Buice*, 250 S.W.2d at 48 (observing that "[i]t thus appears that there has been a part performance of the contract in that the appellant has done everything that he agreed to do for this stock to be transferred to him except of course the signing of the notes for the stock and of course he would not do this until the appellees were willing and ready to transfer the stock to him")

13

As stated above, the doctrine of partial performance, intended to prevent fraud or unjust results, is "purely an equitable doctrine" and dependent upon the facts of each individual case. *See Buice*, 250 S.W.2d at 48; *Schnider*, 65 S.W.3d at 622. The Court also notes that this doctrine, if too liberally applied, could easily result in the partial performance exception swallowing the rule of the Statute of Frauds. *See Buice*, 250 S.W.2d at 48. Under the facts of this case, a finding that the inspection of the barge package alone would constitute partial performance and take the Purchase Agreement out of the Statute of Frauds would certainly "swallow[] the rule." The record as a whole simply does not contain enough performance by either party for the Court to find that the Purchase Agreement was partially performed.

In light of all of this and mindful of the summary judgment standard, the Court finds that partial performance of the Purchase Agreement did not occur and that any alleged oral modification of the Purchase Agreement was invalid under the Statute of Frauds. Thus, because there was no valid modification of the Purchase Agreement and a condition precedent of the Purchase Agreement was unsatisfied, performance under the Purchase Agreement never became due and no enforceable contract existed. Because there was no enforceable contract, there can be no claim for breach of contract and thus, J & M is entitled to summary judgment as a matter of law as to Plaintiffs' breach of contract claim. *Matsushita*, 475 U.S. at 587; *Burchett*, 310 F.3d at 942.

### B. Breach of the Duties of Good Faith and Fair Dealing[11]

Plaintiffs have also alleged that J & M acted in bad faith and failed to observe reasonable standards of fair dealing in connection with the Purchase Agreement [Doc. 1-2, at ¶¶ 11-14]. In Tennessee, "[p]arties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract." *Barnes & Robinson Co. v. Onesource Facility Servs., Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006) (citing *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996)); *Elliott v. Elliott*, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004). This implied-in-law covenant has two purposes: (1) it honors the contracting parties' reasonable expectations; and (2) it protects the rights of the parties to receive the benefits of the agreement they entered into. *Barnes & Robinson Co.*, 195 S.W.3d at 642 (citations omitted). Notably, a breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather "may be an element or circumstance of recognized torts, or breaches of contracts." *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989) (discussing how "it does not appear that good faith, or the lack of it . . . standing alone, [is] an actionable tort"); *see also Envoy Corp. v. Quintiles Transnat'l Corp.*, No. 3:03cv0539, 2007 WL 2173365, at *8 (M.D. Tenn. July 26, 2007) (finding that "absent a valid claim for breach of contract, there is no cause of action for breach of an implied covenant of good faith and fair dealing").[12]

---

[11]Plaintiffs have stated, in separate paragraphs of the Complaint, a claim for breach of the duty of good faith and a claim for breach of the duty of fair dealing [Doc. 1-2, at ¶¶ 11-14]. However, as these claims are essentially related, the Court will treat them together [*Id.*].

[12]Though the district court in *Envoy Corporation* was interpreting North Carolina law, the principles and reasoning are nonetheless persuasive in light of similar reasoning in *Solomon*, 774 S.W.2d 935.

15

As discussed above, Plaintiffs failed to establish an enforceable contract because the conditions precedent of the Purchase Agreement were unsatisfied and any oral modification to the Purchase Agreement was invalid under the Statute of Frauds. Because there was no enforceable contract, Plaintiffs have failed to establish a breach of contract claim. A claim for breach of the implied covenant of good faith and fair dealing does not provide an independent basis for relief and is, rather, a potential "element or circumstance of recognized torts, or breaches of contracts." *Solomon*, 774 S.W.2d at 945. In other words, this claim is just "part and parcel" of Plaintiffs' breach of contract claim. *Envoy Corp.*, 2007 WL 2173365, at *8. As a result, the Court will also grant summary judgment in favor of J & M as to Plaintiffs' claims for breach of the duty of good faith and breach of the duty to observe reasonable commercial standards of fair dealing.

## IV. Conclusion

For the reasons set forth herein, Defendant J & M Incorporated's Motion for Summary Judgment [Doc. 21], will be **GRANTED**, whereby the claims of Plaintiffs Upperline Equipment Company, R & K Equipment Services, and North American Machinery, Inc. will be **dismissed with prejudice.**

ORDERED ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE